# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| MAYA WILLOW SIAS, | Index No. |
| Plaintiff, | |
| | **SUMMONS** |
| -against- | |
| | Plaintiff designates New York County as the place of trial. |
| AMMAR MAHMOUD M.D., and ALINEA MEDICAL ASSOCIATES P.C. d/b/a ALINEA MEDICAL SPA, | The basis of venue is the place of business of Defendant Alinea Medical Associates P.C. is in New York County, and Defendant Ammar Mahmoud M.D., is a resident of New York County. |
| Defendants. | |

To the above-named Defendants:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on plaintiff's attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York), and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
October 22, 2024

DAVIDOFF HUTCHER & CITRON LLP

By:___*/s/ Benjamin Noren*_____
     Benjamin Noren
     605 Third Avenue
     New York, New York 10158
     (212) 557-7200
     *Attorneys for Plaintiff*

To:    Dr. Ammar Mahmoud
       Alinea Medical Associates P.C.
       590 Fifth Avenue, 17th Floor
       New York, New York 10036

Alinea Medical Associates P.C.
590 Fifth Avenue, 17th Floor
New York, New York 10036

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MAYA WILLOW SIAS,

                                    Plaintiff,

            -against-

AMMAR MAHMOUD M.D., and ALINEA MEDICAL
ASSOCIATES P.C. d/b/a ALINEA MEDICAL SPA,

                                    Defendants.

Index No.: _____

**VERIFIED COMPLAINT**

Plaintiff Maya Willow Sias ("Willow" or "Plaintiff"), by her attorneys Davidoff Hutcher
& Citron LLP, for her Verified Complaint against Defendants Dr. Ammar Mahmoud ("Dr.
Mahmoud") and Alinea Medical Associates P.C. d/b/a Alinea Medical Spa ("Alinea" and
collectively with Dr. Mahmoud, "Defendants"), alleges as follows:

**NATURE OF THE ACTION**

1.      While one would believe that in this day and age it would be impossible to
be shocked by depraved and misogynistic conduct, the callous and heinous actions of Dr. Ammar
Mahmoud rise to a previously unimaginable level.  Over the course of nine interminable months
Dr. Mahmoud – who, ironically, is a well-known plastic surgeon – physically, mentally, and
sexually abused Willow.  After dating Willow for a brief period, Dr. Mahmoud convinced Willow
to move into his apartment at 325 5th Avenue, in New York City.  He then implemented his plan
to exercise more and more mental and physical control over her through various forms of
seduction, coercion, intimidation, violence, and on many occasions the use of psychotropic drugs.
In short, he turned her into a sex slave.  Rather than treat her with the kindness and care which she
expected, and to which she was entitled, Dr. Mahmoud physically beat and assaulted Willow to
the point that her face and body became unrecognizable.  Below is a set of before and after photos,
which display the results of one of Dr. Mahmoud's barbaric attacks:

1



2.      In addition, Dr. Mahmoud coerced Willow into non-consensual sexual acts, and sought to cultivate her dependency on him, by surveillance, imprisonment, and drugs. Now that Willow has escaped Dr. Mahmoud's clutches, she brings this action to seek redress for the horrific injuries she suffered and continues to suffer. Willow believes she is just the most recent victim of Dr. Mahmoud and that there are other women who were similarly beaten and/or abused.

## **PARTIES**

3.      Willow is 25-year-old women, currently residing in Los Angeles, California. Among other things, Willow is a professional model and singer. https://www.maxim.com/entertainment/meet-rising-singer-willow-sias/.

4.      Dr. Ammar Mahmoud is a highly regarded plastic surgeon that specializes in labiaplasties and vaginoplasties. He is a resident of New York City and operates Alinea Medical Spa located at 590 Fifth Avenue, 17th Floor, New York, New York 10036.

2

5.     Alinea Medical Associates P.C. d/b/a Alinea Medical Spa is a domestic professional corporation, which is headquartered at 590 Fifth Avenue, 17th Floor New York, New York 10036.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to CPLR §§ 301 and 302 as Dr. Mahmoud is a resident of New York, Alinea's headquarters is in New York, and the acts complained of occurred within New York.

7.     This case involves horrific and terrifying acts of sexual abuse and assault, committed by Defendants at 325 5th Avenue, Apartment 22H, New York, New York 10016 and 590 Fifth Avenue, 17th Floor, New York, New York 10036.

8.     Venue is proper in New York County pursuant to CPLR § 503 as Dr. Mahmoud resides in New York County, Alinea's headquarters are in New York County, and a substantial part of the events giving rise to the claims occurred in New York County.

## FACTUAL ALLEGATIONS

9.     On April 9, 2023, Willow was introduced to Dr. Mahmoud at a yacht party in Miami, Florida.

10.     Later that month, on or about April 19, 2023, Willow traveled to New York City for a modeling job.

11.     While in New York, Willow went on a date with Dr. Mahmoud at Catch in the Meatpacking District.

12.     The date was successful, and the two quickly began a consensual romantic relationship.

3

13.     Dr. Mahmoud began to shower Willow with extravagant gifts and trips to Miami and Dubai.

14.     On or about May 7, 2023, at Dr. Mahmoud's specific request Willow moved into his residence at 325 5th Avenue, Apartment 22H, New York, New York 10016.  Dr. Mahmoud agreed to ship her belongings from North Carolina to New York City.

15.     Willow soon encountered Dr. Mahmoud's dark side and monstrous temper.

16.     Dr. Mahmoud regularly abused alcohol, 2C (a synthetic psychedelic drug), ketamine, and other drugs.

17.     Although she didn't know it at the time, Dr. Mahmoud was a sex addict that regularly engaged in sex acts with prostitutes.

18.     Almost nightly, Dr. Mahmoud would abuse drugs and alcohol, and force himself upon Willow at all hours of the night, irrespective of whether Willow consented to the sexual acts, or was even conscious.

19.     On June 7, 2023, Willow and Dr. Mahmoud went out to dinner and returned home for a quiet evening at the apartment.  Several hours later, Willow was awoken by noises from the living room.  She went to investigate and discovered Dr. Mahmoud partying with three prostitutes.

20.     Willow was upset and confused.  She demanded that the women leave the apartment.

21.     After the women left, Dr. Mahmoud violently hurled Willow to the ground, mercilessly punched her face and body, and smothered her face with a pillow, causing her to lose consciousness.

4

NYSCEF DOC. NO. 1

INDEX NO. 159833/2024

RECEIVED NYSCEF: 10/22/2024

22. Upon regaining consciousness, Willow found herself in excruciating pain, her right eye swollen shut, her right orbital socket fractured, her head misshapen, and her body and face covered in blood and bruises.

23. Below are some photographs of the results of Dr. Mahmoud's violent attack.





24.     While Dr. Mahmoud feigned an apology, and professed his undying love, he refused to permit Willow the opportunity to obtain medical treatment.

25.     Rather, in a calculated move to prevent Willow from reporting his criminal conduct, Dr. Mahmoud forcibly imprisoned her within his apartment for over a month. He monitored her location *via* her cellular phone and issued grave threats of severe consequences should she attempt to leave without his express permission.  In fear for her life, Willow complied.

26.     During this period of imprisonment, Willow's mental health deteriorated, and it was clear to Dr. Mahmoud, a medical doctor, that Willow required medical treatment. However, he feared that Willow would disclose the beating to a therapist/physician, and so he decided to exploit his status as a medical doctor and administer drugs to Willow.  Specifically, Dr. Mahmoud prescribed Willow with anti-depressants and forced her to take medical-grade ketamine in order to keep her obedient and compliant.

27.     In addition, rather than permit Willow to treat her broken orbital socket, Dr. Mahmoud elected to use his medical practice, Alinea, to cover-up the damage. In late July 2023, once the bruising from the previous assault had subsided, Dr. Mahmoud brought Willow to his office at 590 Fifth Avenue. Despite her obvious need for proper medical treatment, Dr. Mahmoud

6

took it upon himself to simply conceal the physical damage he had inflicted, under the guise of his own medical license, which he abused.

28.    Upon arrival at Alinea's medical office, Dr. Mahmoud prepared to inject Willow with tear trough fillers in her right eye, ostensibly to address the residual swelling and damage caused by his violent attack. In a display of calculated cruelty, Dr. Mahmoud refused to follow standard medical protocols and provide anesthetics to relieve the pain.  Instead, he sadistically injected her directly with the hypodermic needle, causing her great pain and distress.

29.    Dr. Mahmoud proceeded to administer the filler directly into her damaged eye area with a hypodermic needle. The procedure was excruciating, and intentionally painful due to the lack of any anesthetic. Willow was left physically and mentally traumatized by the torturous experience. The pain from the injection was compounded by the emotional anguish of knowing that her abuser was also her only option for care, who abused his medical authority to further control and harm her.

30.    This incident was not an isolated act of medical malpractice but simply an example of a broader pattern of abuse wherein Dr. Mahmoud misused his medical expertise to manipulate and dominate Willow. Dr. Mahmoud further violated Willow's mental and physical autonomy by forcibly administering anti-depressants and medical-grade ketamine without proper medical justification. These actions were intended to render her docile and dependent, ensuring her compliance and silence about the abuse she was enduring.

31.    Dr. Mahmoud's efforts were successful, and the pattern of abuse continued through August, September, and October 2023.

32.    On October 20, 2023, Willow woke up around 6:00 am.  She soon discovered that Dr. Mahmoud was hosting an after-party in the apartment.  She searched for Dr.

7

Mahmoud and knocked on the guest bedroom door. A women opened the door, who upon seeing Willow, immediately struck her in the face. Before Willow was able to defend herself, Dr. Mahmoud pinned Willow to the ground, and permitted the women to punch her in the face repeatedly.

33.    Once Willow was able to get up, she called 911 and reported the incident to the NYPD. However, Dr. Mahmoud through a combination of seduction and intimidation, quickly convinced Willow to retract the call, which she did.

34.    Dr. Mahmoud apologized for his behavior and explained that he was under the mistaken belief that Willow had provoked the attack.

35.    Below are some photographs of the aftermath of the attack:



36.    In addition to these beatings, Dr. Mahmoud subjected Willow to further emotional, physical, and sexual abuse, by forcing her to participate in non-consensual sexual activities with strangers, sexually assaulting her while she was unconscious, and physically restraining and threatening her.

37.    Specifically, Dr. Mahmoud forced Willow to participate in threesomes with prostitutes, even though she expressly told him "no."

8

38.     Ultimately, Willow managed to escape on December 20, 2023, and traveled to Los Angeles for safety.

39.     As a direct consequence of Defendants' horrific actions, Willow is now afflicted with Post-Traumatic Stress Disorder, insomnia, claustrophobia, and a diminished capacity for sex and intimacy.

40.     In addition, the physical and psychological trauma Willow has suffered wreaked havoc on her modeling career, causing her to lose multiple lucrative professional opportunities and continues to hamper her career.

41.     As a result of Defendants' actions, Willow has incurred significant physical and psychological damages, medical expenses, therapy costs, and other out-of-pocket expenses.

42.     Furthermore, she has suffered substantial lost income and a diminished earning capacity due to the detrimental impact of Defendants' actions on her flourishing modeling career.

### COUNT I:
### VIOLATION OF NEW YORK CITY VICTIMS OF GENDER-MOTIVATED VIOLENCE PROTECTION ACT ("GMVA")
#### (against Dr. Mahmoud)

43.     Willow incorporates by reference the allegations contained in paragraphs 1 through 40 as though fully set forth herein.

44.     New York City Administrative Code § 10-1103 provides a civil cause of action for victims of violence "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender."

45.     New York City Administrative Code § 10-1103 defines "crime of violence" as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property

9

as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction,"

46.     Dr. Mahmoud subjected Willow to a crime of violence by, *inter alia*, assaulting her on June 7, 2023, and October 20, 2023.

47.     Dr. Mahmoud committed a crime of violence on the basis of Willow's gender, and due to an animus towards women.

48.     Indeed, Dr. Mahmoud's mistreatment of women is not isolated to his conduct towards Willow.

49.     Dr. Mahmoud has a long-history of abuse towards women, including his ex-wife, who has alleged that Dr. Mahmoud repeatedly beat her, raped her, and abused her.

50.     As a direct and proximate result of the aforementioned crime of violence and gender-motivated violence, Willow has sustained and will continue to sustain, monetary damages, physical injury, pain and suffering and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

### COUNT II:
### <ins>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</ins>
### (against Dr. Mahmoud)

51.     Willow incorporates by reference the allegations contained in paragraphs 1 through 50 as though fully set forth herein.

52.     Dr. Mahmoud's conduct towards Willow was extreme and outrageous, beyond the bounds of decency, and utterly intolerable in a civilized community. This conduct included, but was not limited to, physical beatings, sexual assaults, forced imprisonment, forced administration of drugs, and the deliberate infliction of pain under the guise of medical treatment.

10

53.     Dr. Mahmoud acted with the intent to cause Willow severe emotional distress or with reckless disregard for the high probability that his actions would result in such distress. Dr. Mahmoud's actions were not only intentional but also calculated to cause maximum emotional and psychological harm to Willow.

54.     As a direct and proximate result of Dr. Mahmoud's extreme and outrageous conduct, Willow suffered severe emotional distress. This distress manifested in symptoms including, but not limited to, Post-Traumatic Stress Disorder, insomnia, claustrophobia, anxiety, and a diminished capacity for sex and intimacy.

55.     The emotional distress suffered by Willow was severe and of such a nature that no reasonable person could be expected to endure it. Willow's mental health has been significantly and negatively impacted, requiring ongoing therapy and medical treatment to address the trauma inflicted by Dr. Mahmoud.

56.     Specific incidents contributing to Willow's severe emotional distress include, but are not limited to, the following:

a.      On June 7, 2023, Dr. Mahmoud violently assaulted Willow, causing her to lose consciousness and suffer severe physical injuries. The aftermath left her in excruciating pain, with her right eye swollen shut and her face and body covered in bruises and blood.

b.      Dr. Mahmoud forcibly imprisoned Willow in his apartment for over a month, monitoring her location via her cellular phone and issuing threats of severe consequences should she attempt to leave without his express permission.

c.      Dr. Mahmoud administered anti-depressants and medical-grade ketamine to Willow without her consent, further exacerbating her mental health issues and rendering her more docile and dependent.

d.      In late July 2023, Dr. Mahmoud sadistically injected Willow with tear trough fillers without any anesthetic, causing her significant pain and distress.

11

e.      On October 20, 2023, Dr. Mahmoud permitted another woman to repeatedly punch Willow in the face, resulting in additional physical and emotional trauma.

57.      As a direct result of Dr. Mahmoud's intentional infliction of emotional distress, Willow has sustained and continues to sustain substantial damages. These damages include, but are not limited to, medical expenses, therapy costs, loss of income and earning capacity, and other out-of-pocket expenses. Willow has also suffered and continues to suffer from severe psychological and emotional distress, physical injury, pain and suffering, and a diminished quality of life.

## COUNT III:
## NEGLIGENCE
### (against Dr. Mahmoud and Alinea Medical Spa)

58.      Willow incorporates by reference the allegations contained in paragraphs 1 through 57 as though fully set forth herein.

59.      Dr. Mahmoud's actions and conduct established a doctor-patient relationship. He provided medical advice, administered medical treatments, and prescribed drugs to Willow, thereby assuming the role of her medical provider. He used his medical expertise to diagnose and treat Willow's injuries and mental health conditions, creating an implied doctor-patient relationship.

60.      Willow relied on Dr. Mahmoud's medical knowledge and trusted him to act in her best interests. This included his decision to administer medical treatments that required his professional medical judgment, such as prescribing antidepressants, medical-grade ketamine, and applying tear-trough fillers.

61.      Alinea, under the ownership and control of Dr. Mahmoud, had a duty to ensure that all medical treatments and procedures conducted within its premises were performed

in accordance with established medical standards and protocols. This duty includes providing safe, ethical, and competent medical care and preventing any conduct that could harm patients.

62. Alinea breached this duty by failing to implement adequate safeguards and oversight to prevent Dr. Mahmoud's misuse of medical treatments and drugs. Specifically, Alinea:

a. Allowed Dr. Mahmoud to administer medical treatments and drugs to Willow without proper medical justification, including the forced administration of anti-depressants and medical-grade ketamine, which exacerbated Willow's mental health issues and rendered her more docile and dependent.

b. Permitted Dr. Mahmoud to conduct a medical procedure, namely the injection of tear trough fillers, in a manner that caused Willow significant pain and distress, deliberately refusing to use standard numbing agents to minimize pain.

c. Facilitated and enabled Dr. Mahmoud's exploitation of his position of trust and authority as a medical professional to further control and harm Willow.

63. These actions were not only a gross deviation from the standard of care expected of a medical professional but also constituted a deliberate misuse of medical authority to inflict harm.

64. Indeed, Dr. Mahmoud's actions, though abusive, were committed within the scope of his employment as they involved the use of medical treatments and procedures, which fall within his professional duties.

65. The misconduct was a foreseeable risk inherent in the context of his medical practice, given the lack of safeguards and oversight at Alinea. The use of medical treatments and facilities to perpetrate abuse was a foreseeable consequence of the environment created by Dr. Mahmoud's control over the practice.

66. Therefore, Alinea is liable for the breach of professional duty and negligence committed by Dr. Mahmoud. The medical office provided the resources, facilities, and

13

authority that enabled Dr. Mahmoud to commit these horrendous acts, and it benefited from his professional status and operations.

67.    As a direct and proximate result of Alinea's breach of professional duty and negligence, Willow suffered severe physical and emotional harm. This harm includes, but is not limited to: (i) physical injuries resulting from the improper and painful medical procedures conducted by Dr. Mahmoud; (ii) psychological trauma, including Post-Traumatic Stress Disorder, insomnia, claustrophobia, anxiety, and a diminished capacity for sex and intimacy; (iii) significant medical expenses, therapy costs, loss of income and earning capacity, and other out-of-pocket expenses; and (iv) a diminished quality of life and ongoing emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Maya Willow Sias, respectfully implores this Honorable Court to enter judgment in her favor and against the Defendant, awarding the following relief:

A.  Compensatory damages in an amount to be determined at trial but no less than $10,000,000, commensurate with the profound harm suffered by the Plaintiff;

B.  Punitive damages in an amount to be determined at trial, sufficient to deter the Defendant and others from similar conduct in the future;

C.  Attorney's fees and costs of this action;

D.  Pre- and post-judgment interest as allowed by law;

E.  An injunction preventing the Defendant from contacting the Plaintiff, Maya Willow Sias, directly or indirectly, in any manner whatsoever;

F.  Such other and further relief as this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Maya Willow Sias, hereby demands a trial by jury on all issues so triable.

Dated:  New York, New York
        October 22, 2024

                                        **DAVIDOFF HUTCHER & CITRON LLP**

                              By:    */s/ Benjamin Noren*_____
                                     Benjamin Noren
                                     Larry Hutcher
                                     Derek Wolman
                                     *Attorneys for Plaintiff*
                                     605 Third Ave, 34th Floor
                                     New York, New York 10158
                                     (212) 557-7200
                                     bn@dhclegal.com
                                     lhk@dhclegal.com
                                     daw@dhclegal.com

## ATTORNEY'S VERIFICATION

Benjamin Noren, an attorney duly admitted to practice before the Courts of the State of New York affirms the following to be true under the penalties of perjury:

I am an attorney at Davidoff, Hutcher & Citron LLC, attorneys of record for Plaintiff.  I have read the annexed Verified Complaint and know the contents thereof and the same are true to my knowledge except those matters therein which are stated to be alleged upon information and belief and as to those matters, I believe them to be true. My belief as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files.

This verification is made by me because Plaintiff is not presently in the county where I maintain my offices.

Dated: October 22, 2024
         New York, New York


_____/s/ Benjamin Noren_____
             Benjamin Noren

16